JILL H. COFFMAN (NY Bar 2307098)
CHRISTY J. KWON (CA Bar 217186)
CARMEN LEON (CA Bar 249981)
National Labor Relations Board
Region 20
901 Market Street, Suite 400
San Francisco, California 94103
Telephone: (415) 356-5130/(628) 221-8857
Facsimile: (415) 356-5156
Email: Carmen.leon@nlrb.gov

Attorneys for Applicant.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD, | No. 16-mc-80057-KAW |
| Applicant, | Hearing Date: August 18, 2016 |
| v. | Hearing Time: 11:00 AM |
| UBER TECHNOLOGIES, INC. | **OPPOSITION TO RESPONDENT'S MOTION TO STAY** |
| Respondent. | |

Opposition to Motion to Stay

## I. INTRODUCTION

Respondent's Motion to Stay the NLRB's Application for an Order Requiring Obedience to Subpoena Ad Testificandum and Subpoena Duces Tecum (Motion to Stay) under the auspices of a potential settlement agreement in *O'Connor et al v. Uber Technologies. Inc.*, (Case No. CV13-03826-EMC) should be denied. First, the public interest will be harmed if Respondent is allowed to further delay the NLRB's investigation. Second, Respondent has failed to show it would suffer any harm should the stay not be granted since the NLRB must continue its investigation regardless of the outcome of the *O'Connor* case. Lastly, there are no judicial efficiencies to be gained by the stay since the *O'Connor* settlement will neither terminate the NLRB's investigation into whether Respondent's drivers are statutory employees nor assist in the streamlining of any issues or facts relevant to this proceeding.

## II. FACTS

In October 2015, the General Counsel designated Region 20 coordinate the investigation of the following five charges filed in four Regions: 20-CA-160717 and -160720 (San Francisco, California; filed on 9/24/15), 14-CA-158833 (St. Louis, Missouri; filed on 8/27/15), 28-CA-160791 (Phoenix, Arizona; filed on 9/25/15), and 13-CA-163062 (Chicago, Illinois; filed on 10/30/15). Between October 21 and December 30, 2015, Region 20 attempted to obtain the documents necessary for its investigation through the voluntary cooperation of Respondent. On December 31, 2015, after it became clear that Respondent would not voluntarily produce the necessary documents, the Region issued the two subpoenas at issue in this action.

The NLRB's investigation, which includes this Application for the enforcement of its subpoenas, will continue regardless of the outcome of the *O'Connor* case. This is so because even if the two Region 20 charges that Respondent's Motion focuses on are ultimately withdrawn, other charges that also serve as the predicate for the subpoenas will remain. (ECF 1,

p.2-4; ECF 3, p. 2-3) Moreover, after the issuance of the NLRB subpoenas, four new charges were filed against Respondent with the Regional offices of the NLRB located in Tampa, Florida; Brooklyn, New York; Pennsylvania, Philadelphia; and, Newark, New Jersey. (Exhibits 1(a)-1(d)) Each of the new charges likewise requires the NLRB to determine whether Respondent's drivers are statutory employees under the Act. The NLRB subpoenas seek information relevant to the investigation of whether Respondent's drivers are statutory employees under the National Labor Relations Act ("the Act") and whether its arbitration policy is unlawful.

### III. ARGUMENT

Respondent's Motion to Stay should be denied because it would be inappropriate under the applicable Ninth Circuit standard. The factors considered in this circuit are: "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir.1962) citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). See also *Alvarez v. Gerber Products Co.*, No. 5:12-CV-00906-LHK, 2012 WL 4051130, at *1 (N.D. Cal. Sept. 12, 2012).

Each factor weighs in favor of denying the Motion. As demonstrated below, granting the motion would harm the public interest by causing undue delay to the NLRB's unfair labor practice investigation while Respondent would not suffer any hardship by moving forward with the investigation. Further, the pending settlement agreement cited by Respondent would not simplify, let alone dispatch, the issues this court must consider in deciding whether to enforce the NLRB subpoenas.

### A. Granting the Motion to Stay Would Delay Already Prolonged Proceedings to the Detriment of the Public Interest and NLRB's Statutory Purpose

Granting Respondent's Motion to Stay would harm the public interest in the Board's timely administration and enforcement of the Act. See *Vaca v. Sipes*, 386 U.S. 171, 182-83 n. 8 (1967) ("The public interest in effectuating the policies of the federal labor laws, not the wrong done the individual employee, is always the Board's principal concern in fashioning unfair labor practice remedies.") The NLRB, the charging parties, and the public have already suffered a delay in the investigation of these cases. The first of the charges covered by the NLRB subpoenas was filed on August 27, 2015. (Application, Exhibit 5(a)) The NLRB's time targets require an investigation of this type to be completed within six weeks, and the investigation here has stretched the length of almost a year. (Case Handling Manual Part I, Section 11740 Priority of Case Processing found at www.nlrb.gov/reports-guidance/manuals, and based in part on 29 C.F.R. § 102.73). Further delay in the investigation of these charges based on possible consequences of an inchoate settlement agreement in a case to which the Board is not a party would only frustrate the Board's duty to expediently investigate and remedy unfair labor practice charges.

The Board recognizes that the subpoenas were issued four months after the filing of the first of the five charges covered by the subpoenas. However, this delay should not be mistaken for procrastination. Rather, Region 20 spent substantial time, over two months, attempting to obtain the subpoenaed material through the voluntary cooperation of the Respondent. Furthermore, the time period preceding the issuance of the subpoenas was reasonable given that the subpoenas were issued as part of an investigation involving five charges, four Regions, and the complex and non-typical employment structure of Respondent.

### B. Respondent Has Not Shown that Proceeding in the Instant Matter Would Cause It Any Hardship

Respondent cannot make a showing of hardship or inequity it would suffer if this subpoena enforcement matter were to go forward. "[A party seeking] a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) quoting *Landis v. N. Am. Co.*, 299 U.S. 248 (1936).

Even if the two charges implicated by the *O'Connor* case are eventually withdrawn, the subpoena enforcement action will not become moot because the subpoenas would still seek information regarding the remaining pre-subpoena charges. As discussed above, the scope and relevance of the information sought by the NLRB's subpoenas are unaffected by the ultimate disposition of the two *O'Connor*-related charges because they are not the only legs holding up the NLRB's application for subpoena enforcement.

Moreover, Respondent's mootness argument is based on the mistaken assumption that the NLRB will inevitably approve the withdrawal of the charges filed by two Charging Parties that are plaintiffs in the *O'Connor* case. However, it is in the discretion of the Regional Director of Region 20 of the NLRB to approve such a withdrawal request based on weighing several factors such as whether the public interest will be served, or whether the settlement is repugnant to the purposes of the Act. *Independent Stave Co.*, 287 NLRB 740 (1987); *Alpha Beta Co.*, 273 NLRB 1546 (1985). In other words, the Regional Director will not approve the withdrawal of the charges simply because the Charging Parties' request it pursuant to the *O'Connor* settlement. *Independent Stave Co.*, 287 NLRB at 741 (1987) (the Board reconfirmed that the Board's jurisdiction over settlement agreements requires it to enforce public interests, not private rights,

and to reject private settlements that are repugnant to the Act or Board policy). Respondent errs to the extent it presumes otherwise.

### C. No Judicial Efficiencies Would Be Gained by Granting a Stay Because There Are No Issues that Will be Resolved by the O'Connor Settlement that Would Streamline This Proceeding

Lastly, there are no judicial efficiencies to be gained by the stay because any settlement of the *O'Connor* case will not narrow any factual or legal issues present in this proceeding. The core issue to decide in this proceeding is whether Respondent can challenge the validity of the NLRB's subpoenas when it failed to exhaust the Board's administrative process by not filing a Petition to Revoke with the NLRB. The Ninth Circuit cases governing subpoena enforcement proceedings are well-established: a party who fails to file a petition to revoke with the Board cannot contest the enforcement of a subpoena except on constitutional grounds. See *NLRB v. Fresh & Easy*, 805 F.3d 1155, 1162-1163 (9th Cir. 2015); See also *NLRB v. North Bay Plumbing, Inc.*, 102 F.3d 1005, 1008 (9th Cir. 1996).[1]

Here, there is no question Respondent failed to file a petition to revoke with the Board. Whether or not Respondent must obey the NLRB subpoenas after it failed to exhaust the Board's administrative procedures is not an issue before the *O'Connor* court. It can only be resolved by this court. Thus, the settlement or adjudication of the *O'Connor* case will not impact the legal standard or the Court's inquiry.

---

[1] There is no exception to the exhaustion requirement for investigatory subpoenas, which are issued at the behest of the NLRB's General Counsel and his or her staff. Petitions to revoke investigatory subpoenas are reviewed by the five-member Board, which is independent of the General Counsel and acts as a neutral adjudicator, not as an investigatory body. Compare 29 U.S.C. § 153(d) (granting the General Counsel exclusive authority to investigate unfair labor practice charges and issue complaints) with *id.* §§ 160(b) and 161(a) (granting the Board authority to adjudicate unfair labor practice complaints and to rule on petitions to revoke). Further, petitions to revoke trial subpoenas and petitions to revoke investigatory subpoenas are evaluated by the Board using the same standards. See 29 C.F.R. § 102.31(b).

## IV. CONCLUSION

In sum, regardless of the outcome of the *O'Connor* case, the NLRB will continue to pursue the enforcement of these subpoenas in order to complete its investigation. Any further delay will only harm the public interest while Respondent will not be harmed in any way by gathering the information the NLRB will continue to seek. The stay will not benefit the Court because the *O'Connor* case does not simplify any material facts or issues present in this proceeding.

For the above reasons, Respondent's Motion to Stay should be denied in its entirety.

DATED AT San Francisco, California, this 19th day of July, 2016.

Respectfully submitted,

*/s/ Carmen Leon/*
CARMEN LEON
CHRISTY KWON

Attorneys for Applicant
NATIONAL LABOR RELATIONS BOARD